Pages 1 - 13

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

United States of America,    )
                             )
          Plaintiff,         )
                             )
  VS.                        )         NO. CR 85-0899 EMC
                             )
Coy Ray Phelps,              )
                             )
          Defendant.         )
_____)

                   San Francisco, California
                   Tuesday, September 22, 2015

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
            U.S. ATTORNEY'S OFFICE
            Northern District of California
            450 Golden Gate Avenue
            San Francisco, California  94102
   BY: **MICHAEL MAFFEI**
       **ASSISTANT UNITED STATES ATTORNEY**

For Defendant:
            LAW OFFICE OF GEORGE C. BOISSEAU
            740 4th Street, Second Floor
            Santa Rosa, California  95404
   BY: **GEORGE C. BOISSEAU**
       **ATTORNEY AT LAW**

Reported By:        Kelly L. Shainline, CSR No. 13476, RPR
                   Court Reporter Pro Tem

1   Tuesday - September 22, 2015                            3:14 p.m.

2

3       **THE CLERK:**  Calling case CR 85-0899, USA versus Coy
4   Ray Phelps.
5       Counsel, please come to the podium, and state your name
6   for the record.
7       **MR. MAFFEI:**  Good afternoon, Your Honor.  Michael
8   Maffei for the United States.
9       **THE COURT:**  All right.  Good afternoon, Mr. Maffei.
10      **MR. BOISSEAU:**  Good afternoon, Your Honor.  George
11  Boisseau on behalf of Mr. Phelps, who's present before the
12  Court.
13      **THE COURT:**  All right.  Good afternoon, Mr. Boisseau,
14  and good afternoon, Mr. Phelps.
15      Things have been -- various papers have been filed, and I
16  have read all the papers that have been filed so far, and I
17  understand that Mr. Phelps objects to the proposed conditions.
18  But it became obvious that he is -- should have counsel in this
19  regard, and so I am prepared to appoint Mr. Boisseau to
20  represent Mr. Phelps, because if we're going to hear the
21  objections, I think it would be good to have full briefing.
22      I take it that's your --
23      **MR. BOISSEAU:**  I think -- Your Honor, I'll explain the
24  situation.  In terms of the financial affidavit, I filed that.
25  Mr. Phelps has been, of course, in civil commitment for --

1   since 1987 except for a brief period of time.

2   He has a bank account that he knows of in Wells Fargo. He
3   doesn't know the account. I put that in the financial
4   affidavit. There's no other assets that I'm aware of and that
5   Mr. Phelps is aware of. So --

6   **THE COURT:** So all the other blanks really mean zero?

7   **MR. BOISSEAU:** Pardon me?

8   **THE COURT:** All the blanks mean zero?

9   **MR. BOISSEAU:** Yes, all the blanks are zero.

10   And the Court understands Mr. Phelps, because of his frail
11   physical condition, he's also hard of hearing. So it's a
12   little bit difficult to communicate with Mr. Phelps other than
13   shouting. So, hopefully, he's hearing what we're saying right
14   now.

15   In terms of the objections -- and I think I do want to
16   make it clear that Mr. Phelps will abide by any conditions that
17   are set by this Court. He understands there's conditions.

18   His objections have been consistent over the years, even
19   2001 when I represented him last in a hearing, that he believes
20   that the Court has no jurisdiction to impose conditions because
21   of his status as a civil committee and that these conditions
22   were -- are set in contravention of the statutes, and that's
23   actually on his -- defendant's motion -- proposed motion to
24   strike. That sets paragraphs one, through -- one through three
25   actually states his bases for his objections.

1   He would like to preserve that issue because he's
2   litigated that several times in the Ninth Circuit.
3       **THE COURT:**  Right.
4       **MR. BOISSEAU:**  But that being said, I don't want to
5   look like Mr. Phelps won't abide by the conditions if the Court
6   believes it has jurisdiction to those conditions and order his
7   release upon conditional release.  He will abide by the
8   conditions.
9       His only concern is condition number one that it seems to
10  be indefinite.  But if you read in conjunction with other
11  conditions, it looks like, working with Probation, he believes
12  or -- the conditions seem to imply that a plan should be set up
13  so he can leave the halfway house at a period of time when he's
14  ready and has made all the arrangements.  And I think that's
15  the intent of everyone in reading the Bureau of Prison's
16  discussions regarding this issue.  I certainly think that their
17  intent is not that he be indefinitely housed at a halfway
18  house.
19      Mr. Phelps would like that there be a certain time limit
20  on the halfway house that he could work against.  Obviously, if
21  we say four months and he's allowed -- if he's had a plan set
22  out that he could live some place else and made arrangements,
23  then that will be fine.  If in four months comes up, we could
24  always modify it according to this Court's jurisdiction.
25      So that is what he would like.  But all the other

1  conditions he will abide for.  He's anxious to be released to
2  the community and to comply with these conditions.
3       And he is certainly -- he doesn't want to have the Court
4  believe that he won't abide by the conditions.  He just thinks
5  that, as he stated, that these -- the Court has no
6  jurisdiction, but that is probably for another day and another
7  Court.
8       **THE COURT:**  Okay.  What's the Government's -- so the
9  main concern, at least right at this moment, is the
10 indefiniteness in terms of time.  No time limit with respect to
11 the halfway house.  It is true that the recommended condition
12 just says RRC unless he's unable to reside and he's got to find
13 another location but it doesn't have any time frame.  What's
14 your -- do you have an understanding or what's the Government's
15 view of that?
16      **MR. MAFFEI:**  Sure.  So just like the commitment
17 process itself, it is indefinite and the defendant is up for
18 review on a yearly basis to determine whether or not he still
19 presents to be a danger to himself or the community.  So what
20 I -- first of all, let me address a couple points that the
21 defense counsel made.
22      Number one, I disagree with the defense's proposition that
23 we put a time limit on how long the defendant should reside at
24 the Geo Care halfway house because I think it should be left
25 entirely up to Probation and with -- in conjunction with

1   medical professionals to determine how the defendant's reentry
2   into society occurs.
3       It could be four months.  It could be six months.  It
4   could be a year.  Who knows.  But I don't think we should
5   set -- without more, I don't think we should set any sort of
6   deadline on that.
7       Secondly, these are -- the arguments that the defense --
8   the defendant makes in his numerous filings are the same
9   arguments that he's made since at least 2000, 1999.  The Ninth
10  Circuit has addressed the constitutionality of the release
11  conditions in Phelps' earlier case United States versus Phelps,
12  which we cite to.
13      It looks to me that the defense's -- the filing at 570 is,
14  basically, a rehash of that brief with the 14 conditions that
15  the Warden recommends kind of thrown in there in a
16  cut-and-paste fashion.
17      So I mention that because I am concerned when defense
18  counsel says that Mr. Phelps will agree to abide by the 14
19  conditions when in fact all his filings indicate that he will
20  not, and he thinks that he should be released unconditionally.
21      This being the defendant's burden to prove that he can be
22  released, I don't think the -- the filings clearly show that
23  he's not met that burden and I think -- which is why we made
24  clear in both of our filings, which I want to put on the record
25  now.  We believe that the Court, if the Court is so inclined to

1   conditionally release the defendant, it should be according to
2   the 14 conditions as proposed by the Warden of the institution.
3       And I can go on and on.  But I think that --
4           **THE COURT:**  All right.
5           **MR. MAFFEI:**  -- the papers speak for themselves.
6           **THE COURT:**  Well, and condition number two does
7   indicate that this is indefinite because it says that probation
8   officer is to approve of any change.
9           **MR. MAFFEI:**  Change.  Certainly.
10          **THE COURT:**  So it is up to change at any point, and
11  it's hard to forecast at this point what would be appropriate.
12  So the intent seems pretty clear here that it was not intended
13  to be -- this is not your typical situation where, you know,
14  we're using this as a clear transition in terms of, you know,
15  completion of a drug rehab plan or something like that.
16          **MR. MAFFEI:**  Correct.
17          **THE COURT:**  This is different.
18          **MR. BOISSEAU:**  No --
19          **MR. MAFFEI:**  I think -- hold on a second.
20      To Your Honor's point, condition number two relates
21  directly to condition number one.  It is up to change at a
22  later point in time as long as the Probation Office, presumably
23  in conjunction with the medical professionals who will be
24  treating the defendant, deem it appropriate for the defendant
25  to change his residence.  I don't think there's anything out of

1   the ordinary or difficult about that condition along with the
2   other conditions as well.
3       **MR. BOISSEAU:** Can I point out one of the obvious
4   concerns is that even the condition provides if the probation
5   officer may place Mr. Phelps in another location if the -- if
6   he's unable to reside at the halfway house. I say that because
7   the Court can see that Mr. Phelps is confined to a wheelchair.
8   He also has a catheter. His condition is frail.
9       We're assuming at this point in time the halfway house can
10  deal with his physical conditions. If there -- the problem
11  will become obvious to them, if there is a problem. I'm
12  hopeful that Ms. James, who's assigned the case, at least has
13  brought that to their attention.
14      So we may be dealing with -- it may be a smooth transition
15  to a halfway house and that we can deal with it there, and as I
16  stated, Mr. Phelps will abide by all the conditions. But if
17  his physical condition makes him unable to stay at the halfway
18  house, Probation with Mr. Phelps are going to have to find an
19  alternative.
20      **THE COURT:** And that's -- condition number one says
21  that. If medically they can't accommodate him, they're going
22  to have to find -- I'm not sure what it is. Hopefully there's
23  some arrangement somewhere. I think we all have to work
24  together to find some kind of -- I think that's built in. I
25  think they probably anticipated perhaps because of his medical

1  condition, he may not be able to reside at the Geo reentry, and
2  I don't know what they're capable of doing.
3          **MR. BOISSEAU:**  We'll find out soon --
4          **THE COURT:**  I guess we'll find out soon.
5          **MR. BOISSEAU:**  -- and Probation will.  And so let's --
6  I guess, the Court haven't essentially ruled on the conditions;
7  and so if the Court wishes to, you know, Mr. Phelps has already
8  agreed to them at the Bureau of Prisons but he's agreeable to
9  them as stated and will comply with them, and we can start his
10 reentry into the community as soon as possible.
11         **THE COURT:**  Well, yes.
12         **MR. MAFFEI:**  Do we think -- I think we're all in
13 agreement that the conditions will -- well, let me ask the
14 Court this:  Would it maybe be prudent to get on the record the
15 defendant's agreement as to the 14 conditions in terms of the
16 release?  Because of the filings that have gone back and forth,
17 it's unclear to me, frankly, whether he will.  And so I would
18 propose that.
19         **THE COURT:**  Do you have any objection to your
20 client --
21         **MR. BOISSEAU:**  If we can do it loud enough.
22         **THE COURT:**  Okay.  All right.  Well, let me ask.  Can
23 you hear what we're talking about, Mr. Phelps?  Can you hear
24 me?
25              (Counsel and defendant conferring.)

```
1        MR. BOISSEAU:  Can you hear the Court?
2        THE DEFENDANT:  No.
3        THE COURT:  Okay.  Can you hear?
4        THE DEFENDANT:  Uh-huh.
5        THE COURT:  Okay.  Great.  So what your attorney --
6   and I am appointing Mr. Boisseau to represent you in this
7   matter.  So make that clear for the record -- is indicating
8   that you will agree -- I know you object to the Court's
9   jurisdiction, but I find that there is jurisdiction here, and
10  that the Court does have the ability and the power to impose
11  the conditions recommended by the Warden and the facility.  And
12  so I want to make sure that you understand that and that you
13  are ready to comply with these conditions, and I will release
14  you on those conditions.
15       Okay.  You're nodding your head "yes."
16       THE DEFENDANT:  Uh-huh.
17       THE COURT:  All right.  So we got an affirmation from
18  Mr. Phelps.  Thank you.
19       So I will go ahead and sign the order of release.  I don't
20  know if I have that form ordered.  Does somebody have that --
21  I'll have to dig that out and sign it.  It will have the 14
22  conditions.
23       MR. MAFFEI:  Thank you, Your Honor.
24       THE COURT:  It does mean that, obviously, they're
25  going to have to check to make sure he's able to reside at RRC.
```

1   If they can't take him, well, I guess we'll have to figure out
2   where we go from there.
3           **MR. MAFFEI:**  Sure.
4           **THE COURT:**  It is indefinite, but he can get approval,
5   seek approval from Probation, at any time to change his housing
6   situation if that, and he can always come back to the Court and
7   ask for change of conditions.  So that's obviously without
8   prejudice.  But this is how we're going to start off with these
9   14 conditions, and so I will go ahead and sign the order.
10          **MR. BOISSEAU:**  Thank you, Your Honor.
11          **THE COURT:**  We can get that process started.
12  Obviously, we'll have to get Jennifer James tuned in very
13  quickly and she's not here right now, but she will be --
14          **MR. MAFFEI:**  Not to throw Probation under the bus.
15  They knew about this.  I'm sure they have something.  I will
16  contact her regarding the proposed order for the Court's
17  signature.
18          **THE COURT:**  That's fine.
19          **MR. BOISSEAU:**  The Marshals will transport Mr. Phelps
20  to the halfway house?
21          **THE COURT:**  Well, I'm not sure how -- what is the
22  process at this point?  I think they have to get clearance.  I
23  think Ms. James has to call the halfway house first to make
24  sure they got space, they can accommodate him, and then --
25          **MR. MAFFEI:**  I assume there's an out-processing

1  procedure from the federal facility in Springfield, Missouri,
2  as well.  I don't think it's just so long --
3         **THE COURT:**  Is he still within the jurisdiction of
4  Springfield at this point?
5         **MR. MAFFEI:**  Yes.  He is still currently housed at
6  the --
7         **THE COURT:**  Well, when they get my order, they'll know
8  that they need to transfer him out here so that he can be
9  released to the halfway house.
10        **MR. MAFFEI:**  Yes.  He's at the medical center for
11 federal prisoners in Springfield, Missouri, as of -- he's under
12 their custody right now.
13        **THE COURT:**  Well, then maybe once they see the order,
14 they'll say don't bother bringing him back.  There's no sense
15 in that.  Just release him directly.
16        **MR. BOISSEAU:**  Well, maybe we should request that.
17 Because it would be silly to bring him back to release him in
18 Springfield.
19        **THE COURT:**  I will add the words to the order
20 forthwith and say that the Court recommends that he be released
21 directly from, you know, the Bay Area, not be ping-ponged back
22 and forth.
23        **MR. BOISSEAU:**  And can we at least -- not definite,
24 but at least advise all parties not to just leave him outside
25 the federal building because he is confined to a wheelchair and

1   it would be very difficult to wheel over to the halfway house.
2   **THE COURT:** Yeah.  I'm hesitant to make any commitment
3   without Probation being involved because I think they're going
4   to have to figure out a way.  Between they and the Marshals and
5   the Bureau of Prisons will have to figure out a way that he can
6   get to wherever he's released to the facility, assuming they
7   take him.  I just don't know the answer to that.
8   **MR. BOISSEAU:** You know, I would -- I was hopeful that
9   they had preflighted this with them.  Because we have known
10  about this for some time.  I will talk -- I left a message and,
11  actually, I don't remember if I left a message or tried to
12  leave a message with Ms. James, but I'll go right now over to
13  the 17th floor --
14  **THE COURT:** All right.
15  **MR. BOISSEAU:** -- and talk to her and indicate what's
16  going on so we can start this process.
17  **THE COURT:** Okay.  Well, I'll do my share by signing
18  the order, and it will have the words "forthwith" in there.
19  All right.
20  **MR. MAFFEI:** I will coordinate with Probation to get
21  that order for the Court's signature.
22  **THE COURT:** Thank you.
23  **MR. BOISSEAU:** Thank you very much, Your Honor.
24  **THE COURT:** All right.  Thank you.
25          (Proceedings adjourned at 3:31 p.m.)

**CERTIFICATE OF REPORTER**

I, KELLY SHAINLINE, Court Reporter for the United States District Court, Northern District of California, hereby certify that the foregoing proceedings in CR 85-0899 EMC, USA v. Coy Ray Phelps, were reported by me, a shorthand reporter, and were thereafter transcribed under my direction into text; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

Kelly Shainline, Court Reporter

Tuesday, May 16, 2016